ST. LOUIS BREWING ASSOCIATION, Respondent,
v. KALTENBACH and BORO, Appellants.

St. Louis Court of Appeals, December 13, 1904.

**LANDLORD AND TENANT:** Guarantor of Rent: Cancellation of Lease. Where one became a guarantor to a landlord for the payment of rent by the tenant, in consideration that the tenant in the conduct of his business should sell only the goods of the guarantor, with a provision that if the tenant should violate any of the conditions of the lease, his contract should be forfeited and the guarantor should stand as the lessee; the guarantor was not a mere security, but had a beneficial interest in the lease and it could not be cancelled by the lessor and the lessee without his consent.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale, Judge.*

AFFIRMED.

*Rassieur & Rassieur* for appellants.

*Kehr & Tittmann* for respondent.

STATEMENT.

On April 17, 1902, all the parties to this suit executed a written instrument. The portion material to this controversy reads as follows:

"This lease, made this seventeenth day of April, 1902, by and between Joseph Kaltenbach, as lessor, and James Boro, as lessee, witnesseth:

"That said lessor has leased and by these presents does lease to the said lessee the entire two-story brick building known as No. 3352 Laclede avenue, city of St. Louis, Missouri, together with the appurtenances thereto belonging, also the cellar and right to use of yard in rear in connection with other tenants, for a term of five years from the seventh day of August, 1902, at a rental of 'one thousand dollars ($1,000) per year, payable in installments of eighty-three and thirty-three and one-third hundredths dollars ($83.33 1-3) on the seventh day of each and every month during said term in advance. . . .

"In consideration of the guaranty of the St. Louis Brewing Association of the covenant to pay rent contained in this lease during the time the same shall be occupied by the lessee, it is further covenanted and agreed between said lessor, said lessee and said St. Louis Brewing Association as follows, to-wit: That neither the said lessee nor any one claiming through or under him shall or will at any time during the term aforesaid sell, tap, barter or give away, or permit to to be sold, tapped, bartered or given away by any person whomsoever on the premises aforesaid, or any part thereof any beer or malt liquors other than such manufactured and sold by the St. Louis Brewing Association without its written consent first had and obtained.

"This lease shall not nor shall any part thereof be assigned nor shall said premises or any part thereof be sublet to any person or persons without the written consent of said lessor and of said association first obtained.

"That during said term aforesaid, said premises shall not nor shall any part thereof be used for any trade or business other than for a saloon or dramshop without the written consent of said association. But it is understood that the foregoing clause shall particularly apply to the lower floor of said premises and that the second floor may be used only for dwelling-house purposes.

"It is hereby agreed and understood that in case default be made in the payment of said rents as hereinbefore provided or in case of the violation of any of the other conditions, covenants and agreements aforesaid in this lease contained, then at the request of said association, the said lessor, his successors or assigns shall declare this lease forfeited and terminated by a written notice to that effect delivered to the lessee, his assigns, or legal representatives, if found, or if not found, then by declaration in writing filed in the recorder's office of the city of St. Louis, and thereupon he or they will peaceably quit the possession of said premises and shall surrender the same to said lessor or his assigns and in such event, the said brewing association shall be and stand as the lessee of said premises for the then unexpired term of this lease, subject to all the conditions, covenants, and agreements therein contained, all of which said association hereby covenants and agrees to perform, save and except the covenant against assignment and subletting which shall then cease and stand ended. And said premises may by said association be sublet to a good and respectable tenant only who shall be obligated and bound to maintain a saloon business therein fully up to the standard of that now conducted by said Boro.

"And it is further agreed that no waiver of any forfeiture for the violation of any of the terms, covenants and agreements contained and set forth in this lease shall waive any subsequent right of forfeiture or any subsequent breach of such terms, covenants or agreements; nor shall any consent to any assignment or subletting of said premises or any part thereof be held or construed as a waiver or release of such covenant against any other or future subleasing or assignment. And it is also understood that for any violation of the terms of conditions contained in this lease that a forfeiture may be declared as hereinbefore provided.

"And in consideration hereof, said St. Louis Brewing Association does hereby guarantee the performance of all the covenants and conditions contained in the foregoing lease."

At the time the lease was executed, Boro was engaged in the saloon business at the premises and had been so engaged for the past five years. He paid rent and complied with all the conditions of the lease, purchasing all his beer from the plaintiff as per contract, until September 1, 1903, at which date he held the premises under a new lease executed to him by Kaltenbach on the previous day (August 31, 1903). Thereafter he refused to take any of plaintiff's beer but bought his beer exclusively from the Union Brewing Company. On August 31, 1903, Kaltenbach and Boro entered into a written agreement wherein they agreed to a cancellation of the lease of April 17, 1902, and Kaltenbach acknowledged a surrender of the premises to him by Boro. On the same day Kaltenbach again leased the premises to Boro for a term of five years commencing September 1, 1903, at the same rental and upon practically the same terms as in the former lease, except there was no surety for Boro and no clause requiring him to keep a dramshop on the premises. There was no actual surrender of the premises by Boro to Kaltenbach, but simply a formal surrender and the new lease

was executed. Plaintiff's consent to the surrender of the lease was neither asked for nor obtained. After learning of the surrender of the lease and the execution of the new one, plaintiff notified Kaltenbach in writing as follows:

"St. Louis, Mo., September 2, 1903.
"Mr. Joseph Kaltenbach,
              "City.
"Sir:

"The lease executed by you as lessor, James Boro, as lessee, and by the undersigned, St. Louis Brewing Association, as party thereto, dated the seventeenth day of April, 1902, by which the premises known as No. 3352 Laclede avenue, in the city of St. Louis, Missouri, are demised for a term of five years from the seventh day of August, 1902, for a saloon and dramshop, contains the following provision: 'It is further covenanted and agreed between said lessor, said lessee and said St. Louis Brewing Association as follows, to-wit: That neither the said lessee, nor any one claiming through or under him shall or will at any time during the term aforesaid, sell, tap, barter or give away or permit to be sold, tapped, bartered or given away, by any person whomsoever on the premises aforesaid or on any part thereof any beer or malt liquors other than such manufactured and sold by said St. Louis Brewing Association, without its written consent first had and obtained.'

"Said lease furthermore provides that in case of the violation of any condition, covenant or agreement therein contained, then you, the said lessor, at the request of the undersigned, shall and will by a written notice to said lessee, declare his said term of lease forfeited and terminated and that the undersigned be and stand as the lessee of said premises for the then unexpired portion of said term.

"You are hereby notified that the said James Boro, on the first day of September, 1903, sold and

permitted beer and malt liquors other than beer and malt liquors manufactured and sold by the said St. Louis Brewing Association to be sold, tapped and bartered on the premises aforesaid, without the consent of said association and in violation of the aforesaid covenant of said lease. And you are further notified that he avows his purpose to continue without the consent and against the protest of the undersigned, to sell, tap, barter or give away on said premises beer and malt liquors other than beer and malt liquors manufactured by said St. Louis Brewing Association and to permit the same to be done.

"And the said St. Louis Brewing Association hereby requests you, the said Joseph Kaltenbach, to forfeit and terminate said lease to said James Boro and the term thereby granted to him and to declare to him such forfeiture in manner as said lease directs; and the said St. Louis Brewing Association hereby claims the rest and residue of said term and will stand as the lessee of said premises for the unexpired portion of said lease in accordance with its provisions.

"ST. LOUIS BREWING ASSOCIATION,
"By JOHN G. GRONE,
"Second Vice-President."

On September fifth, Mr. Kaltenbach replied to this letter as follows:

"St. Louis, Mo., September 5, 1903.
"St. Louis Brewing Association,
"Wainwright Building,
"City.

"Gentlemen:
"Replying to your notice of the second inst., I wish to inform you that the lease of April 17, 1902, to which you refer, was duly cancelled by agreement entered into between Mr. Boro and myself on August 31, 1903, and the term by said lease created is at an

end, and your association thereby became released from all liability to me as guarantor for the lessee.

"The lease provided that in case of the violation of any of the covenants on the part of the lessee, I should forfeit the same, upon written notice from you, but Boro was never guilty of any violation of any covenant of that lease while it was in force. That lease contained no covenant against voluntary surrender by mutual consent, and I believe I have the right to agree to its cancellation and to accept a surrender of the premises without asking your consent, since you were merely his guarantor and were in no sense my tenant. The lease provided that you should have the right to the premises for the rest of the term in the event of the forfeiture of Boro's rights, but the lease nowhere provided that you should remain liable or become entitled to the premises in the event of the cancellation of the lease and surrender of the term.

"At any rate, the lease of April 17, 1902, has been cancelled, and the term thereby created has been surrendered. It is therefore too late now to declare any forfeiture.

"I also wish to add that Mr. Boro now occupies the premises under a new lease, and I cannot recognize any rights which you may claim to the possession of the premises.

"Yours very truly,
"Joseph Kaltenbach."

On February 17, 1904, plaintiff filed its bill in equity, praying for a decree to compel the defendant Kaltenbach to declare a forfeiture of the original lease, for cancellation of the new lease and for a decree vesting the premises in the plaintiff for the remainder of the original term.

The answer admits the allegations of the petition with respect to the execution of the original lease, but sets up the cancellation of said lease by the agreement

of lessor and lessee, of August 31, 1903, and the making of the new lease above referred to.

Upon the hearing, the facts above set forth were developed and the court entered a decree in favor of plaintiff, from which decree, after an unsuccessful motion for a new trial, the defendants have perfected their appeal to this court.

BLAND, P. J. (after stating the facts).—It is conceded by the appellants that if Kaltenbach and Boro did not have the right to cancel the lease without the consent of the plaintiff, the judgment should be affirmed. Whether or not they had that right, we think, depends upon whether the plaintiff was a mere security for the payment of the rent or whether, in consideration of becoming such security, it was given a beneficial interest in the contract of lease. That a consideration was given for its becoming security, admits of no doubt. The consideration was, that Boro keep his saloon on the premises for the entire term of the lease and that he "nor any one claiming through or under him shall or will, at any time during the term aforesaid, sell, tap, barter or give away, or permit to be sold, tapped, bartered or given away by any person whomsoever on the premises aforesaid, or any part thereof, any beer or malt liquors other than such manufactured and sold by said St. Louis Brewing Association, without its written consent first had and obtained." This covenant gave plaintiff a beneficial interest in the lease and it could not be surrendered without its consent.

The judgment is affirmed. All concur.